UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| **HARVEY KING,** | } |
| | } |
| **Plaintiff,** | } |
| | } |
| v. | } |
| | } Case No.: 2:20-cv-01800-MHH |
| **THE WATER WORKS BOARD OF** | } |
| **THE CITY OF BIRMINGHAM,** | } |
| | } |
| **Defendant.** | } |
| | } |

**MEMORANDUM OPINION**

In this employment discrimination action, plaintiff Harvey King asserts that the Water Works Board of the City of Birmingham refused to promote him because of his race and his age. The Board contends that it did not promote Mr. King because he was not the most qualified candidate for the position for which he applied. The Board asks the Court to enter judgment in its favor on Mr. King's discrimination claims. (Doc. 43). This opinion resolves the Board's motion for summary judgment.

This opinion begins with a discussion of the standard that a district court uses to evaluate motions for summary judgment. Then, consistent with the summary judgment standard, the Court identifies the evidence that the parties have submitted, describing the evidence in the light most favorable to Mr. King. Finally, the Court examines the summary judgment evidence through the lens of the legal authority that governs Mr. King's discrimination claims to determine whether Mr. King has

1

identified disputed questions of fact that a jury must resolve.

**I.**

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, a district court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a).  To demonstrate that a genuine dispute as to a material fact precludes summary judgment, a party opposing a motion for summary judgment must cite "to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." FED. R. CIV. P. 56(c)(1)(A).  "The court need consider only the cited materials, but it may consider other materials in the record." FED. R. CIV. P. 56(c)(3).  When considering a summary judgment motion, a district court must view the evidence in the record and draw reasonable inferences from the evidence in the light most favorable to the non-moving party.  *Sconiers v. Lockhart*, 946 F.3d 1256, 1260 (11th Cir. 2020).  Accordingly, the Court views the evidence in the light most favorable to Mr. King and draws all reasonable inferences from the evidence in his favor.

**II.**

In 2012, the Water Works Board of the City of Birmingham hired Mr. King

to work in the Board's fire hydrant department. (Doc. 17-1, p. 7, tp. 23). At the time, Mr. King was in his mid-fifties, and he had significant work experience. (Doc. 17-1, p. 29, tp. 110). Mr. King worked for the City of Birmingham from approximately 1983 until 2002 as a laborer and truck driver, (Doc. 17-1, pp. 12–13, 16, tpp. 45–49, 59), and eventually was promoted to Construction Supervisor, (Doc. 17-1, p. 14, tp. 50). After leaving the City of Birmingham, Mr. King worked for Dunn Buildings as a construction equipment operator, (Doc. 17-1, p. 17, tp. 63), and then worked for himself in residential construction as a contractor, (Doc. 17-1, p. 18, tpp. 67–69). Mr. King is Black. (Doc. 17-1, pp. 97–98).

Sometime after he joined the Board, Mr. King's department superintendent, Keith Witt, told Mr. King to move to the pipe-laying crew so that he could learn the construction inspector job and get promoted to the position. (Doc. 17-1, p. 21, tp. 78; pp. 26–27, tpp. 101–02). Mr. King was designated as a Utility Worker I. (Doc. 17-1, p. 46, tp. 179). As a Utility Worker I, Mr. King performed the 18 essential functions that the Board listed in its job description for construction inspectors. (Doc. 17-1, p. 46, tpp. 178–80; Doc. 17-1, pp. 99–100).

Since he became an employee of the Board in 2012, the Board has interviewed Mr. King for a construction inspector position three times, most recently in 2019 when two construction inspector openings were available. The Board selected another candidate for the position each time Mr. King interviewed for the job. (Doc.

p. 25–26, tpp. 97–98; 27–28, tp. 103–08); (Doc. 17-2, p. 16, tp. 59). Each time Mr. King applied for a construction inspector position, the individual the Board selected for the position was younger than Mr. King. (Doc. 17-2, p. 25, tpp. 93–94); (Doc. 22-2, p. 65–67). Mr. King was 62 years old when the Board passed him over for promotion in 2019. (Doc. 17-1, p. 97). Additionally, the Board selected White candidates to fill three of the four openings for which Mr. King applied. (Doc. 17-2, p. 25, tp. 93).

In her deposition, Charlotte Harris, the Human Resources representative for the Board who participated in the construction inspector interviews, described the Board's interview and promotion procedure. According to Ms. Harris, an interviewer for a position completes a form with scores for each candidate based on the candidate's answers during the interview. (Doc. 17-2, p. 16, tpp. 57–58). The first two pages of the form provide space for an interviewer to make notes about a candidate's responses to the standard interview questions. On the third page of the form, the interviewer rates the candidate in six categories on a scale of 1 to 3 and provides brief comments relating to the rating. (Docs. 17-6 through 17-11).[1] Ms. Harris and a manager interview candidates who qualify for a position. Ms. Harris then inputs each candidate's scores into a matrix spreadsheet, and the candidate with

---

[1] The six categories are experience, job history, education, communication skills, appearance, and knowledge of skills necessary to perform the position. (Doc. 17-4); (Doc. 17-14).

the highest score is selected for the position. (Doc. 17-2, p. 16, tpp. 57-58; *see* Doc. 17-4). The scoring process is subjective. (Doc. 17-2, p. 28, tpp. 106–07).

Mr. King filed EEOC discrimination charges in 2017, 2018, and 2019, one for each time the Board passed over him for a construction inspector position. (Doc. 17-1, pp. 23–25, tpp. 87–95; p. 97). Mr. King did not pursue litigation on the 2017 and 2018 charges; this case concerns only the Board's failure to promote Mr. King to one of the two available construction inspector positions in 2019. (Doc. 17-1, p. 25, tpp. 94–95; p. 97).

## III.

Mr. King asserts a race discrimination claim under Title VII and an age discrimination claim under the Age Discrimination in Employment Act to challenge the Board's failure to promote him to fill either of two openings in 2019 for the job of construction inspector.[2] "'[T]he Eleventh Circuit has adapted to issues of age

---

[2] In his complaint, in addition to his Title VII and ADEA discrimination claims, Mr. King asserted a race discrimination claim under 42 U.S.C. § 1981, (Doc. 1, p. 6), and retaliation claims under Title VII, § 1981, and the ADEA, (Doc. 1, pp. 12, 22). In its summary judgment motion, the Board stated: "Plaintiff, by and through counsel, has advised that he will waive his Section 1981 claims[.]" (Doc. 18, p. 2). Mr. King did not challenge the assertion in his brief in opposition to the Board's motion for summary judgment, (Doc. 23), so the Court will dismiss Mr. King's § 1981 claims. Mr. King did not respond to the Board's request for summary judgment on Mr. King's remaining retaliation claims. "Where a plaintiff fails to respond to an argument in a motion for summary judgment, he waives the argument." *Grant v. Maiami-Dade Cnty.*, 2014 WL 7928394, at *9 (S.D. Fla. Dec. 11, 2014), *aff'd sub nom. Grant v. Miami-Dade Cnty. Water & Sewer Dep't*, 636 Fed. Appx. 462 (11th Cir. 2015) (citing *Mitchell v. ConAgra Foods, Inc.*, 448 Fed. Appx. 911, 914 (11th Cir. 2011)). Therefore, the Court will enter judgment in favor of the Board on Mr. King's retaliation claims.

discrimination the principles of law applicable to cases arising under the very similar provisions of Title VII.'" *Combs v. Plantation Patterns*, 106 F.3d 1519, 1530 n.4 (11th Cir. 1997) (quoting *Hairston v. Gainesville Sun Publishing Co*., 9 F.3d 913, 919 (11th Cir.1993)). Therefore, the Court uses the same framework to evaluate Mr. King's claims for race and age discrimination.

Mr. King's claims rest on circumstantial evidence. Therefore, the Court may use the *McDonnell Douglas* burden-shifting framework to analyze Mr. King's claims. *Sprowl v. Mercedes-Benz U.S. Int'l, Inc*., 815 Fed. Appx. 473, 479 (11th Cir. 2020) (race discrimination); *Liebman v. Metro. Life Ins. Co.*, 808 F.3d 1294, 1298 (11th Cir. 2015) (age discrimination). "To succeed under this framework, a plaintiff must first present enough evidence to establish a prima facie case of discrimination; the employer then has the burden of production to articulate legitimate, nondiscriminatory reasons for the adverse employment action; and then the plaintiff must prove that those reasons were pretext." *Sprowl*, 815 Fed. Appx. at 479; *Liebman*, 808 F.3d at 1298.[3]

---

[3] "[E]stablishing the elements of the *McDonnell Douglas* framework is not, and never was intended to be, the *sine qua non* for a plaintiff to survive a summary judgment motion in an employment discrimination case. . . . Rather, the plaintiff will always survive summary judgment if he presents circumstantial evidence that creates a triable issue concerning the employer's discriminatory intent." *Smith v. Lockheed-Martin Corp.*, 644 F.3d 1321, 1328 (11th Cir. 2011). Here, the parties focus their arguments on the *McDonnell Douglas* framework, (Doc. 18, p. 18; Doc. 23, p. 12), so the Court follows suit. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).

To establish a prima facie case of race discrimination, Mr. King "must demonstrate only that he: (1) "belonged to a protected class"; (2) "was qualified for and applied for a position that the employer was seeking to fill"; (3) "despite qualifications, he [] was rejected"; and (4) "the position was filled with an individual outside the protected class." *Vessels v. Atlanta Indep. Sch. Sys.*, 408 F.3d 763, 768 (11th Cir. 2005). In 2019, the Board selected Barry Wright and Curtis Taylor to fill two vacant construction inspector positions. (Doc. 17-4, p. 1). Mr. Wright is White, and Mr. Taylor is Black. (Doc. 17-1, p. 36, tp. 139). As it relates to Mr. King's race discrimination claim, Mr. Wright is outside Mr. King's protected class, but Mr. Taylor is not, so Mr. King has established a prima facie case of race discrimination concerning Mr. Wright's promotion.

To establish a prima facie case of age discrimination, Mr. King must show that: "(1) he was a member of the protected group between the age of forty and seventy; (2) he was subject to an adverse employment action; (3) a substantially younger person filled the position" for which he applied; and (4) he was qualified to do the job" for which he applied. *Liebman*, 808 F.3d at 1298. The Board concedes that Mr. King can establish a prima facie case of age discrimination with respect to Mr. Wright's and Mr. Taylor's promotion in 2019 to the position of construction inspector. (Doc. 18, p. 37).

Because Mr. King has established his prima facie cases of race and age

7

discrimination, the burden shifts to the Board to "articulate legitimate, nondiscriminatory reasons" for not promoting Mr. King. *Sprowl*, 815 Fed. Appx. at 479; *Turlington v. Atlanta Gas Light Co.*, 135 F.3d 1428, 1432 (11th Cir. 1998). The Board's burden is "exceedingly light" and "[s]o long as the [Board] articulates 'a clear and reasonably specific' non-discriminatory basis for its actions, it has discharged its burden of production." *Vessels*, 408 F.3d at 770 (quoting *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 254–55 (1981)); *Walker v. NationsBank of Fla. N.A.*, 53 F.3d 1548, 1556 (11th Cir. 1995).

The Board asserts that it did not promote Mr. King in 2019 because he did not receive one of the two highest scores among the candidates who interviewed for the Board's two construction inspector vacancies that year. (Doc. 18, pp. 20-21). Mr. Wright received the highest average interview score of all candidates with a score of 2.88, and the Board selected him for the first open position. (Doc. 17-2, p. 29, tpp. 110–11; Doc. 17-4, p. 1). Mr. Taylor received a score of 2.79, the second-highest average interview score for all candidates, and the Board selected him for the second open position. (Doc. 17-2, p. 29, tpp. 110–11; Doc. 17-4, p. 1). Mr. King's average interview score was 2.33. (Doc. 17-2, p. 29, tpp. 110–11; Doc. 17-4, p. 1). According to Ms. Harris, the Board promotes employees strictly based on candidates' interview matrix scores. (Doc. 17-2, p. 17, tp. 62). This explanation suffices to satisfy the Board's "exceedingly light" burden of articulating a non-

discriminatory reason for not promoting Mr. King.

"Once the employer meets its burden to produce a non-discriminatory reason for its actions, the presumption of discrimination is eliminated," and Mr. King "must come forward with evidence sufficient to permit a reasonable fact finder to conclude that the legitimate reasons given by the [Board] were not its true reasons, but were a pretext for discrimination." *Vessels*, 408 F.3d at 771; *Damon v. Fleming Supermarkets of Fla., Inc.*, 196 F.3d 1354, 1361 (11th Cir. 1999). "This evidence must reveal such weaknesses, implausibilities, inconsistencies, incoherencies or contradictions in the [Board's] proffered legitimate reasons for its actions that a reasonable factfinder could find them unworthy of credence." *Vessels*, 408 F.3d at 771 (internal quotations and citation omitted); *Watkins v. Sverdrup Tech., Inc.*, 153 F.3d 1308, 1314 (11th Cir. 1998).

Mr. King argues that the Board's proffered reason for not promoting him is pretextual because he was more qualified than Mr. Wright and Mr. Taylor for the construction inspector position. Generally, a construction inspector is responsible for ensuring that "water lines are installed according to the specifications and the drawings provided by engineers," for pressure testing and chlorinating new water lines, and for measuring valves and fittings. (Doc. 17-1, p. 99; Doc. 17-2, p. 66). According to the Board's job description, the position requires an associate degree or an "equivalent combination of education and experience;" five years of

9

experience with "knowledge of piping, valve locations and field activities of the Resource System;" experience "working with large vaults, installing pipes and general plumbing knowledge;" and knowledge of accounting procedures "for time keeping and purchase orders." (Doc. 17-2, p. 67). A construction inspector must "lead projects and coordinate work." (Doc. 17-2, p. 67). The Board's job description contains a detailed list of competencies that a construction inspector should demonstrate. (Doc. 17-2, pp. 67-68).

The Board acknowledges that Mr. King meets its criteria for a construction inspector. Mr. King's credentials are impressive. He holds an associate degree in building construction and worked for the City of Birmingham for approximately 20 years before joining the Board. (Doc. 17-1, p. 12, tpp. 45; p. 16, tp. 59; p. 19, tp. 70). While he worked for the City of Birmingham, Mr. King had many pipe-laying jobs. (Doc. 17-1, pp. 14–15, tpp. 52–54). By 2019, Mr. King had another seven years of overall experience with the Board, with three of the seven years devoted to pipe laying. (Doc. 17-1, p. 7, tp. 23; p. 19, tp. 71; Doc. 17-10, p. 3). Mr. King testified that when he applied for the position, he already was performing the 18 essential functions of a construction inspector. (Doc. 17-1, p. 46, tpp. 178–80; Doc. 17-1, pp. 99-100).

The evidence of Mr. Wright's and Mr. Taylor's qualifications is less than clear. Ms. Harris testified that Mr. Wright has a bachelor's degree and worked in

construction. (Doc. 17-2, p. 24, tp. 91). Mr. Taylor appears to have a bachelor's degree and five years of relevant experience. (Doc. 17-8, p. 3; 17-9, p. 3). The interview forms that Ms. Harris and Mr. Dansby completed during Mr. Wright's and Mr. Taylor's interviews are part of the record, but they are poor copies; information on the forms is cut off on the left margin, and the forms contain some shorthand notations. (Docs. 17-6; 17-7; 17-8; 17-9).[4]

According to the forms, when he applied for the construction inspector position in 2019, Mr. Wright had worked for the Board for three years. He had three-years' experience with Rast Construction, and he had worked seven years as a construction foreman. (Doc. 17-6, p. 3; Doc. 17-7, pp. 1, 3). The interview forms confirm that Mr. Wright had a bachelor's degree. (Doc. 17-6, p. 3; Doc. 17-7, p. 3). When he applied for the construction inspector position, Mr. Taylor had worked for the Board for five years, and he had experience in the military working with contractors and budgets. He had a bachelor's degree in math. (Doc. 17-8, p. 3; Doc. 17-9, p. 3). Thus, Mr. King had more experience with the Board and more construction experience overall than Mr. Wright or Mr. Taylor; he had less formal education than Mr. Wright or Mr. Taylor.

---

[4] One complete form appears in the record, but the form does not pertain to the 2019 job interviews. (Doc. 17-14). The form allows the Court to understand the questions on the form, but it does not permit the Court to review the complete set of notes that Ms. Harris and Mr. Dansby made during the 2019 interviews.

The remaining interview criteria are subjective. They are communication skills, appropriateness of appearance, and evidence of necessary skills/knowledge. (Doc. 17-14, p. 3). It is difficult to tell how the information that Mr. King, Mr. Wright, and Mr. Taylor provided in response to the Board's questions translated into the scores that the candidates received from Ms. Harris and Mr. Dansby. The most objective of the three remaining criteria illustrates the point. Ms. Harris gave all three candidates a 3 for appropriateness of appearance. She noted in the narrative space on the score sheet that Mr. Wright was "well-groomed/dressed," (Doc. 7-6, p. 3); that Mr. Taylor was dressed in slacks, a tie, and, and a dress shirt, (Doc. 17-8, p. 3); and that Mr. King was dressed in slacks, a tie, and, and a dress shirt, (Doc. 17-8, p. 3). Mr. Dansby gave Mr. Wright 2 points for being "dressed," Mr. Taylor 2.5 points for being "dressed," and Mr. King 2 points for being "dressed." (Doc. 17-7, p. 3; Doc. 17-9, p. 3; Doc. 17-11, p. 3). Viewing this evidence in the light most favorable to Mr. King, it is evident that the Board's scoring system left considerable room for discriminatory motives to impact candidates' ratings.[5]

The evidence illustrates that even with respect to the more objective interview

---

[5] For example, at the risk of sounding sarcastic, because it appears that Mr. Taylor and Mr. King were dressed in the same items of clothing for their interviews, it is not clear whether Mr. Dansby preferred Mr. Taylor's tie to Mr. King's tie and therefore gave Mr. Taylor more appearance points than Mr. King or whether Mr. Taylor's pants perhaps had a better crease than Mr. King's pants. This level of subjectivity leaves wide margins for discriminatory motives to creep into scoring, especially when an interviewer has to offer no narrative explanation for his score other than his impression that a candidate was dressed.

criteria of education and experience, the interviewers' subjective impressions governed their scoring. For example, scoring in the category of "Job History" should reflect the applicant's history of stable employment and the presence or absence of significant gaps in employment. For Mr. King's 27 years of continuous work experience, Mr. Dansby gave Mr. King a score of 2.5 for his "strong background." (Doc. 7-11, p. 3). For Mr. Taylor's five years of experience with the Board and an unspecified period of service in the military, Mr. Dansby awarded Mr. Taylor 2.5 points for his "good background." (Doc. 7-9, p. 3). And for his 10 years of experience, three of which were as an employee of the Board, Mr. Dansby gave Mr. Wright 3 points for "contractor history, RAST, putting Water Work PiPP." (Doc. 7-7, p. 3). In contrast, Ms. Harris gave Mr. Wright 2 points for his three years working for the Board, Mr. Taylor 2 points for his five years working for the Board, and Mr. King 2.5 points for his seven years working for the Board. (Doc. 17-6, p. 3; Doc. 17-8, p. 3; Doc. 17-10, p. 3). Viewed in the light most favorable to Mr. King, it appears that Mr. Dansby's scores were motivated by something other than objective data like the number of years of continuous work experience.[6]

---

[6] A comparison of the ratings in the 2018 matrix for the construction inspector position and in the 2019 matrix provides additional support for the proposition that the Board's interview scoring process was substantially, if not entirely, subjective. Mr. Taylor and Mr. King interviewed for the 2018 construction inspector opening. (Doc. 17-5, p. 1). On the 2018 matrix, Mr. Taylor received 2 points from each of the three supervisors in the interview and 3 points from Ms. Harris for his educational background. (Doc. 17-5, p. 1). On the 2019 matrix, presumably for the same educational background, Mr. Taylor received 3 points from Ms. Harris and 3 points from Mr. Dansby. (Doc. 17-4, p. 1). In 2018, two supervisors each gave Mr. Taylor 1 point for job

13

Under binding Eleventh Circuit precedent, an employer's use of subjective hiring criteria standing alone "rarely, if ever, prove[s] pretext." *Springer v. Convergys Customer Mgmt. Grp. Inc.*, 509 F.3d 1344, 1349 (11th Cir. 2007) (internal quotations and citation omitted). "A subjective reason can constitute a legally sufficient, legitimate, nondiscriminatory reason under the *McDonnell Douglas*/*Burdine* analysis. Indeed, subjective evaluations of a job candidate are often critical to the decision-making process, and if anything, are becoming more so in our increasingly service-oriented economy." *Chapman v. AI Transp.*, 229 F.3d 1012, 1033 (11th Cir. 2000). A defendant's "subjective reason is a legally sufficient, legitimate, nondiscriminatory reason if the defendant articulates a clear and reasonably specific factual basis upon which it based its subjective opinion." *Springer*, 509 F.3d at 1349; *Loberger v. Del-Jen, Inc.*, 616 Fed. Appx. 922, 927 (11th Cir. 2015). Here, the evidence viewed in the light most favorable to Mr. King falls short of the articulated clear and reasonably specific standard that prevents a plaintiff from relying on subjective criteria as evidence of discriminatory intent in a failure to promote case. Hence, the Court credits Mr. King's evidence of poorly explained

---

experience, and the third supervisor on the interview gave him 2 points for job experience. (Doc. 17-5, p. 1). In 2019, with one additional year of experience under his belt, Mr. Taylor received 3 points from Mr. Dansby and 2.5 points from Ms. Harris for job experience. (Doc. 17-4, p. 1). In 2018, the three supervisors in the interview and Ms. Harris each gave Mr. King 2 points for his job experience. (Doc. 17-5, p. 1). In 2019, though he also had one additional year of experience when he interviewed again for the construction inspector position, Ms. Harris gave Mr. King 2.5 points for job experience, but Mr. Dansby gave Mr. King 2 points for job experience. (Doc. 17-4, p. 1).

subjective reasons for the ratings he, Mr. Wright, and Mr. Taylor received in their interviews.

Mr. King argues that the Court should consider not only the subjective nature of the Board's interview scoring but also the testimony of John Jackson, a district supervisor for the Board who worked as a construction inspector for approximately six years. (Doc. 22-2, pp. 23-24). Mr. King transferred to work under Mr. Jackson so that Mr. Jackson could train Mr. King for the construction inspector job. (Doc. 22-2, pp. 37–38, 40–41). According to Mr. Jackson, Mr. King trained successfully for the position and met the educational and experience requirements for the position. (Doc. 22-2, pp. 37–38; 53–57). Mr. Jackson interviewed Mr. King for an available construction inspector position in 2018. Mr. Jackson testified that Mr. King should have been hired for the position then. (Doc. 22-2, pp. 61–62).[7] Mr. Jackson also testified that Mr. Wright and Mr. Taylor, the candidates the Board promoted in 2019, were less qualified for the construction inspector position than Mr. King. (Doc. 22, p. 69).

Were superior qualifications the only evidence a plaintiff needed to establish

---

[7] The Board argues that Mr. Jackson did not score Mr. King the highest during the 2018 interviews. (Doc. 26, p. 9). The Board placed the 2018 matrix containing the construction inspector candidates' interview scores in the record, but the Board did not place the underlying interview forms in the record. Like the 2019 matrix, the 2018 matrix does not identify the interviewers who rated the candidates. For the 2019 matrix, the Court can tell which interviewer assigned each candidates' scores by matching the interview forms to the 2019 matrix. Without the interview forms for the 2018 construction inspector position, the Court cannot tell how Mr. Jackson scored Mr. King's answers in 2018. (Doc. 17-5).

to demonstrate pretext in a failure to promote case, the Court would deny the Board's summary judgment motion. But, under binding Eleventh Circuit precedent, "[i]n the context of a promotion, 'a plaintiff cannot prove pretext by simply arguing or even by showing that he was better qualified than the [person] who received the position he coveted." *Springer*, 509 F.3d at 1349 (quoting *Alexander v. Fulton County*, 207 F.3d 1303, 1339 (11th Cir. 2000)) (alteration in *Springer*). "[A] plaintiff must show that the disparities between the successful applicant's and his own qualifications were 'of such weight and significance that no reasonable person, in the exercise of impartial judgment, could have chosen the candidate selected over the plaintiff.'" *Springer*, 509 F.3d at 1349 (citation omitted); *Loberger*, 616 Fed. Appx. at 929.

Mr. King has not demonstrated that the disparity between his qualifications and Mr. Wright's and Mr. Taylor's qualifications is so significant that no reasonable person could have chosen Mr. Wright or Mr. Taylor over him. The interview forms indicate that though Mr. Wright and Mr. Taylor had fewer years of experience than Mr. King, both had experience in areas that Mr. King lacked. Both had leadership experience and experience working with contractors. Mr. Wright had served as a job foreman and worked with blueprints, and Mr. Taylor had experience working with budgets. (Doc. 17-6, p. 3; Doc. 17-7, p. 3; Doc. 17-8, p. 3). The interview forms indicate that Mr. King's work history lacks evidence of the sorts of technical and management experience that Mr. Wright and Mr. Taylor possessed, and Mr.

King has not testified that the forms are incorrect in that regard. These qualitative differences in the candidates' backgrounds make it difficult to conclude that no reasonable person, in the exercise of impartial judgment, could have selected Mr. Wright and Mr. Taylor over Mr. King.

And, even if Mr. King could show that no reasonable person could have chosen Mr. Wright and Mr. Taylor over him, Mr. King faces another hurdle. Mr. King must show not only that the Board's reason for not promoting him was false, but also that his race and age were the Board's real motivating factors for not promoting him. *Springer*, 509 F.3d at 1349; *Liebman*, 808 F.3d at 1298. Mr. King has not met that burden.

Mr. King urges the Court to look at the Board's historical hiring for the position. (Doc. 23, p. 15). In 2017, the Board awarded the construction inspector position to Bryan Williams, a black employee who received the highest matrix score. (Doc. 17-2, pp. 13–14, tpp. 48–49). Because Mr. Williams decided to accept a different position, the Board promoted Craig Miller, a white employee who received the second-highest matrix score. (Doc. 17-2, pp. 13–14, tpp. 48–49; p. 25, tp. 93). In 2018, the Board promoted David Quinn, a white employee who received the highest matrix score. (Doc. 17-1, p. 37, tp. 143); (Doc. 17-2, p. 14, tp. 49); (Doc. 22-2, p. 66). In 2019, for one of the two available construction inspector positions, the Board selected Mr. Wright, a white employee with the highest matrix score. For

the second position, the Board selected Mr. Taylor, a black employee with the second-highest matrix score. (Doc. 17-1, p. 37, tp. 143); (Doc. 17-2, p. 14, tp. 51; p. 25, tpp. 93–94). Thus, the Board selected a black employee for two of four open construction inspector positions between 2017 and 2019. This evidence is insufficient to prove racial animus.[8]

Mr. King's evidence of ageism likewise falls short. Though the Board filled the construction inspector positions for which Mr. King applied over the years with an employee younger than Mr. King, (Doc. 17-2, p. 25, tpp. 93–94); (Doc. 22-2, p. 65–67), Mr. King has not provided evidence that his age was the real reason for the Board's decision to promote younger individuals. Mr. King asserts that because he was more qualified than those selected, age must have played a role in the Board's decision. (Doc. 17-1, p. 33, tp. 129; p. 34, tpp. 130–31). As the Court has explained, under the *McDonnell Douglas* framework, evidence of superior qualifications must

---

[8] Moreover, as the Eleventh Circuit has cautioned, a district court cannot simply look at the race of individuals who an employer hires or promotes to identify a historical pattern of discriminatory conduct. A district court must examine those hires or promotions in the context of the relevant qualified applicant pool. Mr. King's evidence falls short in that regard. *See Brown v. Am. Honda Motor Co., Inc.*, 939 F.2d 946 (11th Cir. 1991) ("Plaintiff points out that out of approximately 860 Honda dealers nationwide only two are black. Statistical evidence is an appropriate method for demonstrating both a prima facie case of discrimination and pretext. Statistics such as these, however, without an analytic foundation, are virtually meaningless. To say that very few blacks have been selected by Honda does not say a great deal about Honda's practices unless we know how many blacks have applied and failed and compare that to the success rate of equally qualified white applicants.") (citations omitted).

Additionally, Mr. King acknowledges that in 2018 and 2019, Board employees who are Black conducted the interviews for the open construction inspector positions. (Doc. 18, pp. 6, 8; Doc. 23, pp. 4–5).

be coupled with other circumstantial evidence of discriminatory intent for a failure to promote claim to survive a summary judgment motion. *Burdine*, 450 U.S. at 259.[9]

Because Mr. King has not "come forward with evidence sufficient to permit a reasonable fact finder to conclude that the legitimate reasons given by the [Board] were not its true reasons, but were a pretext for discrimination," *Vessels*, 408 F.3d at 771, Mr. King cannot proceed with his discrimination claims. The Court appreciates that Mr. King has worked diligently throughout his career, and the Court understands that Mr. King was well-qualified for the construction inspector position each time he applied for a promotion. Mr. King's discrimination claims fail because he has not pointed to evidence from which reasonable jurors could conclude that the Board did not promote him because of his race or his age.

## CONCLUSION

For the reasons stated above, by separate order, the Court will enter judgment in favor of the Board on Mr. King's claims.

**DONE** and **ORDERED** this March 22, 2023.

_____
**MADELINE HUGHES HAIKALA**
UNITED STATES DISTRICT JUDGE

---

[9] Mr. King relies on the fact that Mr. Witt told him that he would be promoted to the construction inspector position. (Doc. 23, pp. 8, 15); (Doc. 17-1, p. 34, tpp. 133–35). But Mr. King has not presented evidence that Mr. Witt had the authority to promote him to the position. The Court has found no evidence that Mr. Witt was one of the interviewers for the available construction inspector positions or that he was involved in the promotion decision in any way in 2019. (Doc. 17-1, p. 45, tp. 176; Doc. 17-2, pp. 13-14, tpp. 48-51).